IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:      PATRICIA TATE GRUBBS,      Case No. 07-32822-KRH
      Chapter 13
      Debtor.

## MEMORANDUM OPINION

The issue presented in this case is whether § 1325(b)(4)(A)(ii) of the Bankruptcy Code requires the Court to include both the current monthly income of the debtor and the current monthly income attributable to the debtor's nonfiling spouse in determining the applicable commitment period for the Chapter 13 plan of a married debtor filing individually. Based upon a plain reading of the statute, this Court holds that, for purposes of determining the applicable commitment period, the income of the nonfiling spouse of the debtor is used only to the extent that the income is used to pay the debtor's household expenses.

FACTUAL BACKGROUND

Patricia Tate Grubbs (the "Debtor") filed this Chapter 13 bankruptcy case on August 3, 2007 (the "Petition Date"). The Debtor was married as of the Petition Date, but she filed this case individually. Official Form B22C annexed to the Debtor's petition (i) disclosed the Debtor's current monthly income,[1] (ii) included a derivation of the applicable commitment period,[2] and (iii) calculated the Debtor's disposable income.[3] The Debtor reported total monthly income of $8,670.95. Of this amount, $4,270.95 was attributable to the Debtor and $4,400 was

---

[1] "Current monthly income," as defined in § 101(10A) of the Bankruptcy Code, equals the average monthly income derived by the Debtor from all sources during the six-month period preceding the Petition Date.

[2] As discussed extensively below, § 1325(b)(4) of the Bankruptcy Code sets forth the methodology for determining the applicable commitment period.

[3] Disposable income is defined as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." 11 U.S.C.A. § 1325(b)(2) (Pamph. 1 to Supp. 2007).

attributable to the Debtor's spouse.  Part II of Official Form B22C is designed to calculate the applicable commitment period for a debtor's plan.  Here, in making that calculation, the Debtor took a marital adjustment at line 13 deducting the sum of $2,900 from her monthly income.  The reason for this adjustment was to exclude that portion of the income of the nonfiling spouse that was not regularly contributed toward expenses of the Debtor's household.  On line 15 of Official Form B22C, the Debtor reported $69,251.40 as her annualized current monthly income.[4]  As this amount is less than the median income for a family of the Debtor's size in Virginia at the time of filing, the Debtor determined the applicable commitment period for this case to be three years.

       The Chapter 13 trustee (the "Trustee") objected to the Debtor's plan on the grounds that the applicable commitment period for the Debtor's plan should be five years.  The Trustee contends that the Debtor should not have taken the marital adjustment at line 13 of Official Form B22C.  Without the marital adjustment, the Debtor's annualized current monthly income would have been $104,051.40, which amount is higher than the median income for a family of the Debtor's size in Virginia.  Thus, the Trustee concludes, the Debtor should have an applicable commitment period of five years.

       On October 17, 2007, the Court conducted a hearing on this objection at the conclusion of which the Court took the matter under advisement.  The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

---

[4] Current monthly income when multiplied by twelve.

CONCLUSIONS OF LAW

Section 1325 of the Bankruptcy Code governs confirmation of a debtor's Chapter 13 plan. Section 1325(b)(1) prohibits the Court from confirming a plan over the objection of a holder of an allowed unsecured claim or the trustee unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such [unsecured] claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The Debtor in this case is not proposing to pay unsecured creditors' claims in full so that she must commit all of her projected disposable income received during the applicable commitment period to fund her plan. Section 1325(b)(4)(A) provides that the applicable commitment period is three years or:

> not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than -- . . . (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.[5]

11 U.S.C.A. § 1325(b)(4)(A) (Pamph. 1 to Supp. 2007). The Trustee argues that the phrase "current monthly income of the debtor and the debtor's spouse" in § 1325(b)(4)(A)(ii) means that a married debtor who files a Chapter 13 bankruptcy individually must include the entire amount of the debtor's own current monthly income and also the entire amount of the current monthly income of the nonfiling spouse in determining the applicable commitment period for the Chapter 13 plan. The Trustee claims that the plain meaning of the statute dictates such a result. The Court agrees that the plain meaning of the statute must govern the result. *RCI Tech. Corp. v.*

---

[5] The Debtor's disclosures reveal that she has a family of five. At the time of filing, the highest median income for a family of four in Virginia was $79,931 plus $6,900 per additional household member for a total of $86,831.

3

*Sunterra Corp. (In re Sunterra)*, 361 F.3d 257, 265, 269 (4th Cir. 2004). However, the Court disagrees with the Trustee's interpretation of the plain meaning of § 1325(b)(4)(A)(ii).

Section 1325(b)(4)(A)(ii) states that a court should consider the "current monthly income of the debtor and the debtor's spouse" to determine the applicable commitment period. "Current monthly income" is a defined term. Section 101(10A)(A) of the Bankruptcy Code defines "current monthly income" as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) . . . ." By definition, a debtor's spouse has no current monthly income except in a joint case. In a single case, current monthly income applies solely to that income derived by the debtor. The definition of "current monthly income" includes income received by the debtor's spouse only when the debtor has filed a joint case with his or her spouse. *See In re Barnes*, No. 07-03263, 2007 WL 4162822, at * 3 (Bankr. D.S.C. Oct. 26, 2007); *In re Quarterman*, 342 B.R. 647, 650 (Bankr. M.D. Fla. 2006) ("The parenthetical [in 11 U.S.C. § 101(10A)] stating that, in a joint case, a debtor's current monthly income shall include the debtor's spouse's income suggests that, in a single case, the spouse's income is not included in the debtor's current monthly income; otherwise, the parenthetical would be superfluous."). Because the debtor's spouse has no current monthly income, the applicable commitment period will be based only on the debtor's current monthly income. 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007).

It is important to note that the portion of income that the debtor's spouse regularly contributes towards household expenses is included already in the determination of the applicable commitment period under § 101(10A)(B) because that money is part of the debtor's current monthly income. Section 101(10A)(B) states that "current monthly income" "includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's

4

spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . ." Thus, the income that the debtor's spouse contributes to household expenses is part of the debtor's current monthly income under Section 101(10A)(B). *Barnes*, 2007 WL 4162822, at *3; *Quarterman*, 342 B.R. at 651 (". . . [I]n a single case, a debtor's spouse's income shall be included in the debtor's current monthly income to the extent that it is paid 'on a regular basis for the household expenses of the debtor or the debtor's dependents.'") (quoting 11 U.S.C.A. § 101(10A)(B) (Pamph. 1 to Supp. 2007)).

The Court's interpretation of § 1325(b)(4)(A)(ii) does not make the phrase "and the debtor's spouse" surplus language. The debtor's spouse will have current monthly income, as that term is defined in § 101(10A) when the debtors have filed a joint case. 11 U.S.C.A. § 101(10A) (Pamph. 1 to Supp. 2007) ("[T]he term 'current monthly income' — (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)."). The phrase "and the debtor's spouse" in § 1325(b)(4)(A)(ii) acknowledges that the debtor's spouse will have current monthly income in a joint case and, in such a case, directs the court to consider that current monthly income in determining the applicable commitment period. In the case of a married debtor filing individually, the Court also considers the phrase "and the debtor's spouse". The definition of "current monthly income" instructs the Court to add zero as the current monthly income of the nonfiling spouse. *See* 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007).

Interpreting § 1325(b)(4)(A)(ii) in this manner comports with the policies underlying the Bankruptcy Code. The interpretation advanced by the Trustee would subject a married debtor filing individually to greater risk of plan failure. Extending the debtor's plan for another two

5

years means that there are two more years where some unanticipated emergency may render it impossible for the debtor to make plan payments. 8 Collier on Bankruptcy ¶ 1325.08[5][d] (Lawrence P. King ed., 15th ed. rev 2007). There is no evidence that this debtor is better equipped to deal with such emergencies than are other debtors with the same current monthly income. The additional income of a spouse is completely irrelevant if that spouse's income is not available to cover household expenses.

This construction of § 1325(b)(4)(A)(ii) does not conflict with the instructions included in Official Form B22C for line 13. During oral argument, the Trustee noted that the language regarding the marital adjustment for line 13 differs from that for the marital adjustment forn line 19. Line 13 is included in that portion of Official Form B22C that determines the applicable commitment period. The instructions for line 13 state as follows –

> **Marital Adjustment**. If you are married, but are not filing jointly with your spouse, *AND if you contend that calculation of the commitment period under § 1325(b)(4) does not require inclusion of the income of your spouse*, enter the amount of the income listed in Line 10, Column B, that was NOT paid on a regular basis for the household expenses of you or your dependents. Otherwise, enter zero.

Official Form B22C, Line 13 (emphasis added). Line 19 is included in a different portion of Official Form B22C from line 13. Line 19 permits a debtor to take a marital adjustment for purposes of determining disposable income. The instructions for line 19 of Official Form B22C state as follows –

> **Marital Adjustment**. If you are married, but are not filing jointly with your spouse, enter the amount of the income listed in Line 10, Column B that was NOT paid on a regular basis for the household expenses of you or your dependents. If you are unmarried or married and filing jointly with your spouse, enter zero.

Official Form B22C, Line 19.  According to the Trustee, the additional language included in the instructions for line 13 means that individual Chapter 13 debtors who are married can deduct the portion of their spouses' income that is not regularly contributed to household expenses for purposes of determining the applicable commitment period only if they are separated and the nonfiling spouses contribute nothing at all to the debtors' household expenses (Tr. 5).[6]

The Court interprets this language differently.  The additional language included in the instructions for completing line 13 was designed to allow debtors to adopt either of the interpretations of § 1325(b)(4)(A)(ii) that are before the Court today.  8 Collier on Bankruptcy ¶ 1325.08[5][d] n. 95 (Lawrence P. King ed., 15th ed. rev 2007) ("Official Form 22C, which is intended to be neutral on this issue, incorporates this interpretation [the position that this Court has adopted], as well as the interpretation that the income of both spouses must be counted, by permitting the debtor to take the position in line 13 that the nondebtor spouse's income that is not regularly contributed to household expenses of the debtor and the debtor's dependents is not counted to determine the applicable commitment period.").  Because Official Form B22C is neutral on this issue, the Court is not bound by the form's interpretation of the code section.  *Cf. In re Meyer*, 355 B.R. 837, 843 n.6 (Bankr. D.N.M. 2006) ("[O]ne looks to the statute to determine what the law is, and then interprets the form in light of the statute's dictate.").

In this case, the Court finds that it was proper for the Debtor to take the marital adjustment on line 13 of Official Form B22C.  Because the Debtor's current monthly income multiplied by twelve was below $86,831,[7] it was appropriate for the Debtor to file a plan with a

---

[6] The Trustee has provided the Court with no support for this interpretation of the language in line 13 of Official Form B22C.

[7] This is the highest median income for a family of the Debtor's size in Virginia.  *See* fn. 5 *supra*.

7

three-year commitment period.  11 U.S.C.A. § 1325(b)(4).  For that reason, the Court overrules the Trustee's objection and confirms the Debtor's Chapter 13 plan.  A separate order shall issue.

ENTERED: _____

      /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Patricia Tate Grubbs
4555 Cattail Road
Charles City, VA  23030

Laura Taylor Alridge
Boleman Law Firm, P.C.
P.O. Box 11588
Richmond, VA  23230-1588

Carl M. Bates
P. O. Box 1819
Richmond, VA  23218